UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BRANDEON ALEXANDER**                                          CIVIL ACTION

**VERSUS**                                                                    No. 23-2566
                                                                                    c/w 23-7278
                                                                                    REF: ALL CASES

**INTRACOASTAL TUG
AND BARGE COMPANY, L.L.C.**                                   SECTION I

ORDER AND REASONS

Before the Court is an opposed motion[1] *in limine* filed by defendant Intracoastal Tug and Barge Company, LLC ("Intracoastal"), together with defendants Navigators Insurance Company, Ascot Insurance Company, and Mitsui Sumitomo Insurance USA, Inc. (collectively, "defendants"). The present motion seeks to exclude certain opinions of Gary Hensley ("Hensley"), whom plaintiff Brandeon Alexander ("Alexander") retained as a marine safety expert.[2] For the reasons set forth below, the Court grants the motion in part and denies the motion in part.

I. BACKGROUND

This matter arises from personal injuries that Alexander suffered on the barge M/V CALIFORNIA CHROME while in the course and scope of his employment with Intracoastal.[3] As Alexander was reaching for a line on a piling, Alexander's arm was crushed between the barge and the piling.[4] Captain Paul Smith ("Captain Smith")

---

[1] R. Doc. No. 90.
[2] R. Doc. No. 96, at 5.
[3] R. Doc. No. 1, ¶¶ 3, 5.
[4] R. Doc. No. 90-1, at 2.

was operating the barge, and Frederick Deliphose ("Deliphose") was the other deckhand at the time of the accident.[5]

Alexander filed this lawsuit alleging claims for Jones Act negligence, unseaworthiness, and maintenance and cure.[6] Alexander retained Hensley as a marine safety expert "[i]n order to review the actions and omission of the parties in this litigation."[7] Hensley has 30 years of hands-on experience towing vessels, having worked his way up from deckhand to captain.[8] Hensley produced a 16-page report ("the report"),[9] which consists of three parts: an introduction, a fact section, and a section outlining his opinions. The report also lists the materials that Hensley reviewed to produce the report.[10]

Defendants move to exclude 15 of Hensley's opinions as stated in the report.[11] They advance three grounds for exclusion: that several opinions constitute improper legal conclusions,[12] that several others are speculative and unsubstantial,[13] and that the remaining opinions either invade the province of or do not assist the factfinder.[14]

---

[5] *Id.*
[6] R. Doc. No. 1, ¶¶ 2, 6, 10.
[7] R. Doc. No. 96, at 5.
[8] R. Doc. No. 90-6, at 3.
[9] R. Doc. No. 90-6.
[10] *Id.* at 2.
[11] R. Doc. No. 90, at 1.
[12] R. Doc. No. 90-1, at 12–13.
[13] *Id.* at 13–16.
[14] *Id.* at 16–18.

## II. STANDARD OF LAW

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be considered with respect to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.' " (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As for determining relevancy, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue

without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702, Advisory Committee Note).

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.). The Court applies a preponderance of the evidence standard when performing its gatekeeping function under *Daubert*. *See Daubert*, 509 U.S. at 592 n.10. And the Court is not bound by the rules of evidence—except those rules concerning privileges—when doing so. *See id.*

### III. ANALYSIS

### a. Opinions 1 Through 3

Defendants assert that opinions 1 through 3 should be excluded as impermissible legal conclusions.[15] Those opinions state as follows:

- **Opinion 1**: Based on my 30 plus years of training, knowledge, and experience in the maritime industry, it is my opinion that Intracoastal Tug and Barge, LLC. did not provide Brandeon Alexander with a safe place to work and that the M/V California Chrome was not adequately crewed for its intended purpose.[16]

- **Opinion 2**: Given the facts set forth herein, it is my opinion that the vessel was unseaworthy as it lacked an adequate, and trained crew.[17]

- **Opinion 3**: Mr. Alexander testified that Intracoastal Tug and Barge had taken the other captain, John Joseph, off the M/V

---

[15] *Id.* at 12–13.
[16] R. Doc. No. 90, at 2.
[17] *Id.*

> California Chrome and put him on another vessel. With Captain Smith being the only captain onboard the vessel, it is a great possibility that he violated the 12-hour rule. The Master Logs show that Captain Smith was the only captain onboard by himself for a few days, and he even testified that he was in bed asleep when they were called to dock.[18]

Pursuant to Federal Rule of Evidence 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue." "Nevertheless, an expert may never render conclusions of law." *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009). An opinion which "would supply the jury with no information other than the expert's view of how its verdict should read" is an unhelpful and therefore impermissible legal conclusion. *See United States v. Keys*, 747 F. App'x 198, 208 (5th Cir. 2018) (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)). Further, such a legal conclusion "both invades the court's province and is irrelevant." *See Owen*, 698 F.2d at 240. However, an opinion is not inadmissible merely because it "will touch on legal topics." *See Woodard v. Andrus*, No. 03-cv-2098, 2009 WL 140527, at *2 (W.D. La. Jan. 20, 2009) (Vance, J.). "In distinguishing admissible testimony from inadmissible testimony, the task for the Court is to ask whether the expert's opinions bear on some factual inquiry or whether they bear solely on the legal conclusions that are urged." *Id.*

The Court concludes that opinion 1 is not inadmissible as an improper legal conclusion. This Court has previously found that expert testimony as to the safety of the vessel is helpful and therefore does not constitute impermissible legal

---

[18] *Id.*

conclusions. *See Austin v. Sontheimer Offshore/Catering Co.*, No. 23-cv-1602, 2024 WL 217498, at *4 (E.D. La. Jan. 19, 2024) (Africk, J.) ("What is considered "safe means of access" pursuant to maritime safety standards and the maritime industry is not a common sense issue with which the Court is readily familiar."); *Delta Towing, L.L.C. v. Justrabo*, No. 08-cv-3651, 2009 WL 3763868, at *3 (E.D. La. Nov. 9, 2009) (Africk, J.) ("However, Manders' report also contains admissible opinions as to whether the Delta crew acted prudently and as to the safety of the vessel. Although these issues may embrace ultimate issues to be decided by the trier of fact, they are not outright legal conclusions."). For the same reasons, the Court holds that Hensley may testify relative to his opinion that the vessel had an inadequate crew. Defendants may raise an objection to this opinion at trial if there is an insufficient evidentiary foundation for the same.

With respect to opinion 2, the Court holds that Hensley may not testify that the vessel was unseaworthy, as that opinion most plainly tells the jury how the verdict form should read. However, he many testify with regard to the lack of an adequate and trained crew.

With respect to opinion 3, the Court cannot conclude, at this juncture, that the opinion must be excluded. "This Court has recognized that [expert] testimony analyzing the conduct of the various parties with respect to various applicable rules and regulations may assist the trier of fact without crossing the line into impermissible legal conclusions." *Id.* (quotation omitted); *see also Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*, No. 13-cv-6278, 2015 WL 5714622, at *6 (E.D. La. Sept. 28,

7

2015) (Africk, J.); *Mobil Expl. & Producing v. A-Z/Grant Int'l Co.*, No. 91-cv-3124, 1996 WL 194931, at *3 (E.D. La. Apr. 22, 1996) (Fallon, J.). And applicable rules and regulations may be properly admitted even if violations thereof do not constitute negligence *per se. See Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 713 n.22 (5th Cir. 1981). "However, which rules or regulations apply is a legal issue to be decided by the Court." *Shawler v. Ergon Asphalt & Emulsions, Inc.*, No. 15-cv-2599, 2016 WL 1019121, at *4 (E.D. La. Mar. 15, 2016) (Africk, J.), *aff'd sub nom. Shawler v. Big Valley, L.L.C.*, 728 F. App'x 391 (5th Cir. 2018).

Defendants' challenge to the admissibility of opinion 3 is on the ground that it constitutes a legal conclusion rather than its applicability. The report does explain the source and substance of the 12-hour rule.[19] Presently, the Court cannot conclude that opinion 3 would not "bring to the jury more than the lawyers can offer in argument," *see Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992), and that it is therefore an impermissible legal conclusion. Further, Hensley's opinion as to the 12-hour rule does not tell the jury how the verdict form should read. Accordingly, the motion will be denied with respect to opinion 3, without prejudice to defendants' right to raise an objection to this opinion at trial if there is an insufficient evidentiary foundation for the same.

---

[19] R. Doc. No. 90-6, at 14.

### b. Opinions 4 Through 8

Defendants assert that opinions 4 through 8 are inadmissible because they are speculative and unsubstantiated.[20] Those opinions state as follows:

- **Opinion 4**: Captain Smith testified that 19 days after Mr. Alexander's injury, as the M/V California Chrome was turning into Galveston, Texas, one of the rudders just fell off the vessel. With the rudder missing, you have very limited control of a vessel. Since the rudder fell off very shortly after Mr. Alexander's accident, there is a great possibility that there were already problems with the rudder, such as a cracked rudder stock, bent rudder, so many things could have caused the rudder to fall off, but if it were bent prior to falling off, that could have contributed to Mr. Alexander's injury.[21]

- **Opinion 5**: Mr. Alexander testified that while his arm was between the piling and the barge, he informed Mr. Deliphose to call Captain Smith and have him back the tow up, but Mr. Deliphose was on the wrong VHF Channel, and Mr. Alexander was unable to tell Captain Smith to back up. If Mr. Deliphose had been trained in the proper use of the VHF Radio, he would have known that his radio had jumped channels, and he could have corrected it, but he was inexperienced and untrained.[22]

- **Opinion 6**: Mr. Alexander testified that the only training he got while working at Intracoastal was some Safety Orientation videos. He continued by saying that the other companies had regular safety meetings, but they did not have regular safety meetings at Intracoastal Tug and Barge. With Mr. Deliphose being an inexperienced deckhand, and had only been on the boat for 2 days before Mr. Alexander's injury, he should have had some type of land-based training, other than safety videos, before he went and caught a vessel.[23]

- **Opinion 7**: It is my opinion that since Captain Smith testified that he was in bed asleep and had to be awoken to go to the dock, and had only been to HOTFOOT Ship Dock #3 one time

---

[20] R. Doc. No. 90-1, at 13–16.
[21] R. Doc. No. 90, at 3.
[22] *Id.*
[23] *Id.*

9

    previously, I can tell you from my 35 years' experience that doing this IS a very stressful situation, for you have no idea what the dock looks like. Houston Ship Channel is one of the busiest ship channels in America, and with the M/V California Chrome and her tow going to ship dock 3, Captain Smith should have unsecured the vessel from the end he was made fast to and run around to the other end of the tow, and make fast to that end. That way he would not have had to top the tow around and he could have went straight on dock, instead of coming into the dock at an angle, like he did.[24]

- **Opinion 8**: It is also my opinion that Captain Smith possibly became distracted by all the tows and ships on dock, traffic moving in the Houston Ship Channel, radio chatter, and attempting to listen to Mr. Alexander and Mr. Deliphose calling out instructions since Captain Smith was 400' away from them, it was at night, and he had only been to HOTFOOT Ship Dock once previously.[25]

The *Daubert* analysis applies to the facts underlying the expert's opinion. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). Sufficient information is "based on facts in the record" rather than "altered facts and speculation." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). Experts may base their opinions on a competing version of the facts, but the factfinder decides whether the predicate facts are indeed accurate. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). Questions relating to the bases and sources of an expert's opinion, such as the accuracy of the underlying facts, "affect the weight to be assigned that opinion rather than its admissibility." *See United States v. Hodge*,

---

[24] *Id.* (emphasis in original).
[25] *Id.*

933 F.3d 468, 478 (5th Cir. 2019) (quotation omitted). However, an expert may not offer opinions based on a "fictitious set of facts." *See Guillory*, 95 F.3d at 1331.

At the outset, the Court notes that the format in which Hensley produced his report—a facts section followed by three pages summarily listing his opinions—makes it more difficult to discern the specific facts underlying each opinion. Alexander himself recognizes that the report is not "artfully crafted."[26] For this reason, the Court will analyze each opinion in light of the facts section to determine whether there are sufficient facts to support the opinions given.

With respect to opinion 4, the Court concludes that it is inadmissible speculation. The report offers no evidence on which to base the opinion that the rudder was impaired at the time of the accident beside the fact that it broke weeks after the accident. The jury can decide whether this is the case and counsel can argue the same. The Court also notes that the language "great possibility" would not serve to assist the jury because it is vague and would confuse the jury as to the governing burden of proof—*i.e.*, a preponderance of evidence.

With respect to opinions 5 and 6, the Court concludes that Alexander, as the proponent of the expert testimony, has not met his burden to show their admissibility because he does not show that the opinions are based on the record. Both opinions refer to the training that Deliphose did not have prior to the accident. However, as defendants point out, there is no citation in the report to any document or record

---

[26] R. Doc. No. 96, at 8.

regarding Deliphose's training prior to the accident.[27] Nor is there an indication that Hensley reviewed company records addressing the Deliphose's training. Hensley's opinions as to which training Deliphose should have had is necessarily speculative because the embedded assumption as to the training (or lack thereof) that he had is unsubstantiated.

With respect to opinion 7, the Court finds that the opinion is admissible. Defendants assert that the opinion is unsubstantiated because it misstates that Captain Smith had only been to dock no. 3 once prior to the accident.[28] Whether Captain Smith had, in fact, been to dock no. 3 once prior to the accident is better left to cross-examination at trial. But Hensley's opinion as to how Captain Smith should have navigated the ship is admissible because it is based on his specialized knowledge and experience as a ship captain. Further, the opinion provides insight on a topic which the jury could not itself assess with common knowledge and experience. *Cf. Peters*, 898 F.2d at 450.

With respect to opinion 8, the Court finds that the opinion is speculative and therefore inadmissible. The opinion cites reasons as to why Captain Smith could have been distracted. However, it cites no evidence supporting an argument that Captain Smith was, in fact, distracted. Such opinion has an insufficient basis in fact. Further, this is not the type of testimony that requires an expert as the jury is fully capable of discerning whether Captain Smith was distracted.

---

[27] R. Doc. No. 90-1, at 15.
[28] *Id.* at 15–16.

### c. Opinions 9 Through 15

Defendants assert that opinions. 9 through 15 are inadmissible because they either invade the province of the jury or do not assist the factfinder.[29] They argue that those opinions relate to issues scrutable to the "common sense" of the jury.[30] The opinions state as follows:

- **Opinion 9**: Reviewing the safety meeting documents submitted to me, there was not a single safety meeting on securing a tow to the dock, throwing a line, proper use of a spike/pike pole, and Mr. Alexander was not present for any of the safety meetings that were possibly being conducted.[31]

- **Opinion 10**: In Intracoastal Tug and Barge, L.L.C.'s "Towing Safety Management System (TSMS)" there is a section on Job Safety Analysis (JSA) that is to be completed and filled out and signed, but on the night of Mr. Alexander's injury, there was not a JSA performed by Captain Smith, even though it is required, and should have been done since Mr. Deliphose was inexperienced and new to the maritime industry. However, Captain Smith testified that he held a "toolbox talk" which only lasted a few minutes and did not cover all the topics of a JSA.[32]

- **Opinion 11**: In the "TSMS", the spike/pike pole is only mentioned one time, and that was for locking. There were no segments in the "TSMS" as to where it would give you details for securing a line to a piling, grabbing a line hanging off a piling, and the proper use of the spike/pike pole.[33]

- **Opinion 12**: Intracoastal Tug and Barge, LLC. had the duty to exercise Safety Procedures & Precautions to their employees, but they failed to do so, resulting in Mr. Alexander's injuries.[34]

---

[29] *Id.* at 16–19.
[30] *Id.* at 17.
[31] R. Doc. No. 90, at 4.
[32] *Id.*
[33] *Id.*
[34] R. Doc. No. 90-1, at 9.

- **Opinion 13**: Mr. Alexander testified in his deposition that he was initially going to catch their 1st line on the piling, and the flatten out on the dock. He went on to say that Captain Smith was on the wrong end of the barges, and was going to have to top the tow around. He continued by saying that when he reached down in front of the barge to retrieve the line that was hanging off the piling, Captain Smith started twisting the barges into the piling, instead of flattening out on the dock, which caused Mr. Alexander's arm to be crushed. He continued by saying that Captain Smith was holding the head of the barges against the piling, and had been doing so for approximately 5 seconds before he reached down to retrieve the line hanging off the piling.[35]

- **Opinion 14**: If Captain Smith would have flattened the tow out on the dock, which would have brought the head of the barge off and away from the piling. Instead he chose to twist (turn) the head of the tow into the piling, which brought the stern away from the dock, thus catching and crushing Mr. Alexander's arm and hand.[36]

- **Opinion 15**: Captain Smith had the duty to exercise such reasonable care and skill as a prudent mariner would exercise under similar circumstances and conditions that existed the night of Mr. Alexander's injury.[37]

With respect to opinions 9, 10, 11, and 13, the Court holds they are excluded to the extent they are factual recitations that do not form the basis of Hensley's expert opinions. As one of this Court's sister district courts has aptly explained, "Rules 703 and 705 clearly contemplate that an expert may disclose the facts underlying his opinions to the jury." *Barnett v. City of Laurel*, No. 2:18-cv-92, 2019 WL 5788312, at *5 (S.D. Miss. Nov. 6, 2019). Further, it is well-settled that experts may present their own versions of the facts underlying their opinions, subject, of course, to the jury's

---

[35] R. Doc. No. 90, at 4.
[36] *Id.*
[37] *Id.* at 5.

scrutiny. *See Pipitone*, 288 F.3d at 250. What experts cannot do, however, is present facts without applying their expertise to assist the jury in analyzing them. *Barnett*, 2019 WL 5788312, at *5.

The opinions at issue are merely recitations of the facts and Hensley's factual conclusions. On their own, they are plainly inadmissible because they do not serve to assist the trier of fact. At trial, Hensley may recite these facts only if Alexander shows that these factual recitations and conclusions form the basis of Hensley's admissible expert opinions.

With respect to opinion 12, the objection will be sustained in part and granted in part. The latter part of the opinion merely serves to "supply the jury with no information other than the expert's view of how its verdict should read." *See Owen*, 698 F.2d at 240. However, at trial, Hensley may testify to the applicable safety procedures and precautions as well as Intracoastal's compliance or noncompliance therewith.

With respect to opinion 14, the Court concludes that the opinion is admissible, though the opinion is somewhat cryptic because it includes an incomplete sentence. However, the opinion plainly involves expertise in steering the ship, which is not within the common sense or experience of the jury.

With respect to opinion 15, the Court concludes it is an inadmissible statement of the law, which does not assist the jury and encroaches upon the role of the Court. *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge." (quotation omitted)).

15

## IV. CONCLUSION

In light of the foregoing reasons,

**IT IS ORDERED** that the motion *in limine* filed by defendants is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

New Orleans, Louisiana, January 27, 2025.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**